UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

Construction Council 175, Utility
Workers of America, AFL-CIO,

               Petitioner,             **MEMORANDUM & ORDER**

   - against -               No. 20-cv-2732 (KAM) (SJB)

New York Paving, Inc.,

               Respondent.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Petitioner Construction Council 175, Utility Workers of America, AFL-CIO ("Local 175") petitions the Court to confirm an arbitration award and damages calculation issued against Respondent New York Paving, Inc. ("New York Paving"). (ECF No. 1, Pet. Confirm Two Labor Arb. Awards ("Pet.").)  New York Paving cross-petitions the Court to vacate the award. (ECF No. 16, Ans. to Pet. Confirm Two Arb. Awards & Cross-Pet. Vacate Two Arb. Awards ("Cross-Pet.").)[1]  For the reasons stated below, the Court grants Local 175's Petition and denies New York Paving's Cross-Petition.

---

[1] The parties describe the award as "two" arbitration awards; however, the "two" awards are really a single liability award and subsequent damages calculation.  (*See infra* pp. 4-7.)

**BACKGROUND**

I.   **Factual Background**

Local 175 was a party to a collective bargaining agreement ("CBA") with the New York Independent Contractors Alliance ("NYICA") that governed the terms and conditions of employment for Local 175's employees in the regional asphalt paving industry.  (*See* ECF No. 1–3, Agreement Between Members of NYICA & United Plant & Prod. Workers Local Union 175 Paving Div. ("CBA").)  The CBA bound New York Paving, (*see* Pet. ¶ 10; Cross-Pet. p. 9 ¶ 7 n.1), who employed Local 175's workers, through at least June 30, 2018, (*see* Pet. ¶ 8; Cross-Pet. p. 2 ¶ 8).[2]

New York Paving performed utility asphalt paving work for customers in New York City.  (ECF No. 1-1, Arb.'s Award & Op. ("Award") 4.)  The work involved a "binder" crew that filled in holes on a temporary basis and a "top surface" crew that applied a finished grade of asphalt.  (*Id.*)  Article IX, Section 6(c) of the CBA required New York Paving to use ten-person crews, specifically a binder crew of three and a top surface crew of seven.  (CBA Art. IX, § 6(c).)  Because wages, fringe benefit contributions, and union dues were tied to the number of hours worked by Local 175 workers, (*see* Art. XI), the CBA's crew size

---

[2] New York Paving states that it has not been a member of NYICA "since at least 2007" and was not a signatory to the CBA.  (Cross-Pet. p. 9 n.1.)  In a prior proceeding, however, New York Paving "agreed that the CBA was 'adopted by conduct' between [New York Paving] and Local 175 through June 30, 2018, at which time it was terminated."  (*Id.*)

requirement ensured that certain amounts of those payments would be made for each hour that one of New York Paving's crews was dispatched.

"[F]or many years," New York Paving violated that requirement by using six-person crews, specifically a binder crew of two and a top surface crew of four.  (Award 5.) Local 175 sent New York Paving a letter stating its intent to invoke the CBA's grievance and arbitration procedures based on New York Paving's violation of the crew size requirement.  (ECF No. 1-4, Mar. 27, 2018, Ltr. from Matthew P. Rocco to Robert Coletti.)  The parties stipulated to submit the dispute to the American Arbitration Association for a "final and binding" arbitration "subject to standard review."  (Award 3.)  The stipulation stated that the issues to be resolved in the arbitration included (1) whether New York Paving violated Article IX, Section 6(c) of the CBA, (2) if so, whether New York Paving had a valid defense, and (3) if not, the proper remedy. (*Id.* 3-4.)

New York Paving did not dispute that the CBA unambiguously required it to use ten-person crews and that the crew size provision was "not susceptible to any other possible interpretation," nor did it dispute that it had violated that requirement since it became a party to the CBA.  (Award 12.) Rather, it argued that the crew size provision should not be

enforced because Local 175 had allowed New York Paving to use six-person crews for over thirty years before objecting, thus establishing a "past practice" that negated the unambiguous terms of the CBA and operated as a waiver of Local 175's right to arbitrate. (*Id.* 10.)   New York Paving also argued that it was entitled to use crew sizes below the contractual amount under the CBA's "most favored nation" clause because Local 175 permitted some of New York Paving's competitors to use such crew sizes.  (*Id.* 11; *see* CBA Art. XXI.)

## II.  The Arbitration Award

On April 29, 2019, the arbitrator issued a decision finding New York Paving liable for breaching the CBA.  He agreed with Local 175 that New York Paving violated the unambiguous language of the crew size provision.  He noted that "it is not an arbitrator's function to rewrite a collective bargaining agreement" and that "[w]here plain and unambiguous words . . . are used by the parties, those words unequivocally lay out the parties' bargained-for intentions" and "must, therefore, be given their ordinary meaning and . . . contractual effect." (Award 12.)  With those principles established, the arbitrator found that New York Paving violated the CBA's crew size provision based on the provision's unambiguous and undisputed meaning and on the undisputed fact that New York Paving had not complied with it.  (*Id.*)

4

As to New York Paving's laches and past practice defense, the arbitrator explained that though the company had "somewhat of an equitable argument," he would not enforce the past practice "in the face of clear contract language."  (*Id.* 13.) He further reasoned that in the "absence of an agreement . . . to amend or revise the contract language, [Local 175] in the future [could] rely on the clear contract language long ago negotiated."  (*Id.*)  He noted that the reasons for Local 175's "failure over the years to file a grievance or to protest [New York Paving's] contract violation may not be readily understood," but concluded that this "failure [did] not prevent [Local 175] from insisting on strict compliance with the clear contract language in the future."  (*Id.*)

Finally, as to New York Paving's most favored nation defense, the arbitrator noted the "lack of any documentary evidence to support" the testimony of New York Paving's employee that the company's "competitors consistently utilized less than the contractually-required crew sizes."  (*Id.*)  Though the arbitrator found the employee credible, he concluded that the employee's personal observations could not "serve as conclusive proof."  (*Id.*)  Given the lack of "notes, records, or documents" and New York Paving's failure to cite "specific observation dates, times, or job locations," the arbitrator explained, New York Paving failed to meet its burden to establish its most

5

favored nation defense.  (*Id.* 14.)

Finding that Local 175 established that New York Paving breached the CBA and that New York Paving failed to establish its defenses, the arbitrator sustained Local 175's grievance. (*Id.*)  Though the parties had submitted the remedy issue to the arbitrator too, the arbitrator remanded the matter to the parties for ninety days to afford them the opportunity to settle but retained jurisdiction to adjudicate the issue if necessary. (*Id.*)  After the parties' settlement negotiations failed, the arbitrator solicited additional briefing, held a damages hearing, and issued a damages calculation on June 4, 2020.  (ECF No. 1-2, Post-Award Calculation of Damages ("Calc.") 1.)

The arbitrator found credible a year's worth of contemporaneous emails from 2018 prepared by Local 175's shop steward purporting to show each day's total number of crews assigned by New York Paving and the size and composition of each crew.  (*Id.* 2.)  He arrived at a total damages award of $2,698,534.40, relying on a spreadsheet prepared by Local 175 summing the value of the total crew hours lost (lost wages, welfare contributions, pension contributions, annuity contributions, training contributions, and union dues) based on the lowest contractual wage for each day that a shop steward report was submitted.  (*Id.* 3, 6-7.)  He rejected Local 175's request to quadruple the award based on its argument that the

6

contract was also in effect from 2014 to 2017, reasoning that
Local 175 only presented supporting documentation for 2018.
(*Id.* 6.)  He also rejected New York Paving's argument that *no*
damages were appropriate due to the lack of any "showing . . .
of a monetary loss suffered by any specific [Local 175] member."
(*Id.* 4.)

Finally, the arbitrator stayed the award as to the
$1,349,267.40 in damages resulting from New York Paving's breach
from July 1, 2018, through December 31, 2018, in accordance with
the parties' stipulation that any damages award covering periods
after June 30, 2018, automatically would be stayed until the
parties' "contractual obligations . . . are determined in
another venue of competent jurisdiction or by subsequent, mutual
written agreement of the parties."  (*Id.* 7; *see* Award 2.)

## III. The Instant Action

On June 19, 2020, Local 175 petitioned the Court to confirm
the arbitration award, alleging that New York Paving had failed
to pay the $1,349,267.40 portion of the award covering the
period from January 1, 2018, through June 30, 2018, which was
not automatically stayed.  (Pet. ¶¶ 30–35.)  New York Paving has
cross-petitioned to vacate the award in large part, admitting
that it has not paid the $1,349,267.40 but arguing that the
award is unenforceable.  (Cross-Pet. p. 6 ¶ 30, pp. 7–8 ¶ 1.)

7

## **LEGAL STANDARD**

Arbitration awards are not self-enforcing but rather must be "given force and effect by being converted to judicial orders," which can either confirm or vacate the award in whole or in part. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Federal courts have jurisdiction over the enforcement of arbitration awards under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Joval Paint Corp. v. Drew*, No. 19-cv-2968 (MKB), 2021 WL 8323610, at *4 (E.D.N.Y. Feb. 16, 2021).[3]

Judicial review of an arbitration award is a summary proceeding, not an appeal. *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023). The court's task is limited to determining whether the arbitrator was "arguably construing or

---

[3] Decisions interpreting the LMRA form a body of law "analytically distinct" from decisions interpreting the Federal Arbitration Act ("FAA"), another major federal arbitration statute. *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Local 812, Int'l Bhd. of Teamsters*, 242 F.3d 52, 54 (2d Cir. 2001). Still, courts often look to the FAA for guidance in LMRA cases. *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n* ("*Brady*"), 820 F.3d 527, 545 n.13 (2d Cir. 2016). One court has described the FAA as "particularly useful in the context of a petition to confirm or vacate an arbitration award because both the FAA and LMRA allow only limited judicial review of arbitration decisions." *See 1199 SEIU United Healthcare Workers E. v. Lily Pond Nursing Home*, No. 07-cv-408 (JCF), 2008 WL 4443945, at *3 (S.D.N.Y. Sept. 29, 2008). Other courts have suggested that arbitrators in LMRA cases should enjoy *more* deference because commercial arbitration is merely a "substitute for litigation" and labor arbitration is the "substitute for industrial strife." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 296 F. Supp. 3d 614, 623 (S.D.N.Y. 2017) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578 (1960)). With this understanding, the Court will look to FAA cases for guidance but also take care not to rely them for a point on which a difference between the two bodies of law may determine the outcome.

applying the contract and acting within the scope of his [or her] authority." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n* ("*Brady*"), 820 F.3d 527, 532 (2d Cir. 2016) (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  The court must confirm the award regardless of whether the arbitrator's decision was correct so long as there was at least a "barely colorable justification" for the arbitrator's decision.  *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co., Ltd.*, 57 F.4th 372, 378-79 (2d Cir. 2023) (quoting *D.H. Blair*, 462 F.3d at 110).

## DISCUSSION

New York Paving's concession that it violated the plain language of the CBA's crew size requirement, (*see* ECF No. 17, Mem. Law. Supp. Resp't's Cross-Pet. Vacate Two Labor Arb. Awards & Opp. Pet. Confirm Two Labor Arb. Awards ("Opp'n") 2), resolves most of this case.  All that is left for the Court to decide is whether the arbitrator appropriately considered and rejected New York Paving's defenses and damages arguments under a standard "among the most deferential in the law."  *See Brady*, 820 F.3d at 532.

## I.  Manifest Disregard for the Law

New York Paving's arguments largely hinge on what it characterizes as "manifest errors of law" by the arbitrator. (*See* Opp'n 6-14.)  New York Paving's reliance on the "manifest

disregard of the law" doctrine may support vacating a labor arbitration award, *see Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, 729 F. App'x 33, 36 (2d Cir. 2018) (summary order), but only in "exceedingly rare instances where some egregious impropriety on the part of the arbitrator is present," *Smarter Tools*, 57 F.4th at 383 (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)).

Review under this "judicially created doctrine is 'severely limited.'" *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002) (quoting *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir. 1989)).  The arbitrator's decision must stand unless (1) there was a well defined, explicit, and clearly applicable legal principle that should have altered the decision and (2) the arbitrator appreciated the principle's existence but ignored it.  *Id.* at 209.  A court may not vacate an arbitration award based on a "simple error in law or a failure by the arbitrator[] to understand or apply it" but rather only when the arbitrator "intentionally defied the law." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389, 393 (2d Cir. 2003)).

New York Paving contends that the arbitrator acted in

manifest disregard for the law with respect to how he addressed (1) the CBA's most favored nation clause, (2) the parties' past practice, and (3) Local 175's damages.  (Opp'n 6-14.)  The Court disagrees.

### A.    The Most Favored Nation Clause

New York Paving first argues that the arbitrator acted in manifest disregard for the law as to the CBA's most favored nation clause.  (Opp'n 6-8.)  Under that clause, "[Local 175] agree[d] that it [would] not enter into an Agreement with any employer containing more favorable conditions or wages than those agreed to in the [CBA]" and that "[s]hould it be shown that more favorable conditions or wages prevail[ed], then the more favorable conditions or wages shall apply to all signatories to [the CBA]."  (CBA Art. XXI.)  New York Paving asserts it established at the arbitration hearing that Local 175 had permitted at least three other competitors of New York Paving bound by the same CBA and performing the same types of asphalt paving work to use crew sizes smaller than the size the CBA required.  (Opp'n 6-7.)  Thus, New York Paving argues, the CBA entitled it "to adopt the same crew sizes as those used by its Local 175-affiliated competitors."  (*Id.* 8.)

The arbitrator's consideration of the most favored nation clause did not exhibit manifest disregard for the law.  He did not ignore the most favored nation clause.  *See Westerbeke*,

304 F.3d at 209.  To the contrary, he heard the evidence New York Paving submitted to support applying the clause and received briefing from New York Paving on that issue.  (*See* Award 4, 11, 13–14.)  He rejected New York Paving's most favored nation argument because the arbitrator was "persuaded by the lack of any documentary evidence" to support it.  (*Id.* 13.)  He noted that although New York Paving presented anecdotal testimony from its own employee that its competitors routinely used smaller crew sizes, it presented "no notes, records, or documents," nor did it present "specific observation dates, times, or job locations" or "written agreements . . . that condoned the use" of smaller crews.  (*Id.* 14.)  The arbitrator's approach reflects thoughtful consideration, not manifest disregard.

Further, at the very least, the arbitrator had a barely colorable justification for weighing the evidence as he did. Even if the Court were convinced that the arbitrator weighed the evidence incorrectly, that would not support vacating the award. *See Pacheco v. Beverage Works NY, Inc.*, No. 14-cv-5763 (DLI), 2016 WL 8711094, at *6 (E.D.N.Y. Sept. 30, 2016).  Regardless, there is nothing unusual about an adjudicator finding that a party failed to meet its burden of proof by presenting only anecdotal testimony unsupported by any documentary evidence. The arbitrator acted appropriately in rejecting New York

12

Paving's most favored nation defense.

**B.   Past Practice**

New York Paving next argues that the arbitrator acted in manifest disregard for the law by rejecting its argument that the parties' past practice of using smaller crew sizes for utility work overrode the plain language of the CBA's crew size requirement.  (*See* Opp'n 8–11.)  As with New York Paving's most favored nation defense, the arbitrator did not exhibit manifest disregard for the law because he explicitly acknowledged New York Paving's past practice defense and provided a reasoned legal analysis rejecting it.  (*See* Award 8–13.)  An arbitration award must be confirmed when the arbitrator even arguably construed or applied the contract, *Brady*, 820 F.3d at 532, so it is quite odd for New York Paving to seek vacatur on the ground that the arbitrator here adhered too closely to the terms of the CBA.  New York Paving is correct that arbitrators may consider extrinsic evidence to ascertain the meaning of an ambiguous provision in a collective bargaining agreement, (*see* Opp'n 8–9), but as its own cited case states, an arbitrator may not "contradict[] . . . the clearly expressed language of the contract," *Local 1199 Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992); *accord United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015).

The Court also disagrees that the arbitrator "chose to ignore" the parties' "modification of contract terms" through their conduct.  (Opp'n 10–11.)  The arbitrator explicitly found an "absence of an agreement between the parties to amend or revise the contract language."  (Award 13.)  He explained that in reaching that conclusion, he gave "thorough consideration to the testimony of [New York Paving's] witnesses and to the entire proof that was offered to support the meaning of Article IX, section 6 (c) that [New York Paving] sought."  (*Id.*)  Whether contractual parties' conduct expresses intent to modify an existing agreement is a fact-intensive inquiry.  *See Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01-cv-4426 (CBM), 2004 WL 758303, at *16 (S.D.N.Y. Apr. 7, 2004).  New York Paving was not entitled to a finding one way or the other on that issue, and it is not this Court's place to second-guess how the arbitrator weighed the evidence.  *See Pacheco*, 2016 WL 8711094, at *6.

New York Paving's attempt to reframe its past practice argument as a "laches" argument, (*see* Opp'n 11–12), is no more persuasive.  Laches is an equitable defense that applies when a plaintiff's unreasonable delay in bringing a claim prejudices the defendant.  *Republic of Turkey v. Christie's Inc.*, 62 F.4th 64, 71 (2d Cir. 2023).  It is "[e]ssentially the equitable substitute for a statute of limitations."  *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003).  "Accordingly, the

14

doctrine of laches does not provide a defense to a claim of damages for breach of contract." *Deutsche Bank Tr. Co. Ams. v. Rado Ltd. P'ship*, No. 18-cv-6768 (DLC), 2019 WL 4038761, at *7 (S.D.N.Y. Aug. 27, 2019); *see Trs. of N.Y. City Dist. Council of Carpenters Pension Fund v. Halcyon Constr. Corp.*, No. 15-cv-1191 (PGG), 2017 WL 5643603, at *10 (S.D.N.Y. Mar. 31, 2017) (concluding in labor arbitration that defendant's "laches defense fail[ed]" because plaintiffs' claim was "a claim for money damages, pursuant to the . . . CBA"). The arbitrator did not act in manifest disregard for the law by declining to apply a legal rule that *could not* apply to bar Local 175's claim.

The arbitrator also exhibited no manifest disregard in declining to find Local 175's claim barred by the "waiver" doctrine. To the extent New York Paving simply uses the word "waiver" interchangeably with "laches," (*see* Opp'n 5, 12, 15 (describing New York Paving's defense as "waiver/laches" and "waiver and laches")), its waiver argument fails for the same reason its laches argument fails. If New York Paving means to say that the arbitrator showed manifest disregard for its waiver defense as a *distinct* defense, it cannot prevail because it provided no evidence that the arbitrator "appreciated" its waiver argument yet "willfully flouted the governing law by refusing to apply it." *See Westerbeke*, 304 F.3d at 217. The arbitrator's decision does not discuss waiver as a defense to

15

the merits of Local 175's claim, (*see generally* Award; *but see id.* 10 (acknowledging New York Paving raised waiver as a jurisdictional defense)), New York Paving does not appear to have even mentioned waiver at the hearing, (*see generally* ECF No. 16-5, Jan. 11, 2019, Arb. Hr'g Tr.), and New York Paving did not attach any written submissions to the arbitrator discussing waiver.  In its submissions in the instant action, New York Paving's waiver argument is insufficiently developed because it includes no supporting case citations.  *See Kiyantae N. v. Comm'r of Soc. Sec.*, No. 20-cv-6998 (FPG), 2022 WL 2758309, at *5 (W.D.N.Y. July 14, 2022) ("declin[ing] to develop an argument" for party who "cite[d] no case law in support of" it).  Thus, waiver provides no basis to disturb the arbitrator's decision.

To the extent New York Paving is contending that Local 175 waived its right to arbitrate, that issue lies outside the Court's jurisdiction.  When parties "clearly and unmistakably commit[] to arbitrate" a threshold question of arbitrability, the district court must defer to the arbitrator's answer to that question.  *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 326 (2d Cir. 2013).  In that circumstance, whether a party waived its right to arbitrate – a "gateway procedural dispute" – is "presumptively one for the arbitrator."  *Syngenta Crop*

*Protection, LLC v. Ins. Co. of N. Am., Inc.*, No. 18-cv-715 (DLC), 2018 WL 1587601, at *3 (S.D.N.Y. Mar. 29, 2018) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002)). Here, the parties agreed to submit their dispute to the arbitrator "pursuant to the rules of the American Arbitration Association," (Jan. 11, 2019, Arb. Hr'g Tr. 5:13-15), which expressly provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement," *see* Am. Arb. Ass'n Lab. Arb. R. 3(a). Thus, the Court may not override the arbitrator's decision refusing to find that Local 175's "failure to object in any way to the [parties'] longstanding practice should now be deemed a waiver of its right to grieve and arbitrate." (*See* Award 10); *see also 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 520 F. Supp. 3d 588, 607 (S.D.N.Y. 2021) (explaining that parties' explicit incorporation of rules empowering the arbitrator to decide questions of arbitrability, "such as the [American Arbitration Association] Rules," serves as clear and unmistakable evidence of their intent to delegate those issues to the arbitrator).

### C. Damages

New York Paving's final alleged instance of manifest disregard for the law concerns the arbitrator's damages

calculation.  New York Paving argues that "Local 175 presented no evidence whatsoever demonstrating any particular Local 175 member was damaged as a result of [New York Paving's] failure to comply with the CBA's crew size requirements" and that the arbitrator's "reliance on the Local 175 Shop Steward's daily reports . . . was erroneous."  (Opp'n 13.)  It further argues that the arbitrator "disregarded applicable law by awarding backpay, fringe benefit contributions, and dues payments for 2018 on behalf of unidentified Local 175 members who did not in fact perform the work in question."  (*Id.* 14.)  Finally, New York Paving faults the arbitrator for disregarding Article XI of the CBA, which provides that certain benefit fund contributions "are based on 'all hours worked.'"  (*Id.* (quoting CBA Art. XI, § 1).)

The arbitrator did not act with manifest disregard for the law in calculating damages.  Though an arbitrator may not issue an award that "contradicts an express and unambiguous term of the contract" or "so far departs from the terms of the agreement that it is not even arguably derived from the contract," *Tappan Zee Constructors*, 804 F.3d at 275 (quoting *Westerbeke*, 304 F.3d at 222), the arbitrator's damages award here exceeded that bare minimal standard.  The arbitrator relied on documentary evidence quantifying "the shortfall in wages, fund contributions, and Union dues that [were] unpaid and/or lost due to [New York

Paving's] violation of the contractual manning requirement in 2018." (Calc. 6.)  As to the prior years, for which Local 175 submitted no similar documentary evidence, the arbitrator awarded no damages. (*Id.*)  That reasoning is "supported by the record and cannot be attributed to any bias or irrational decision making on the part of the arbitrator." *See Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. High Performance Floors Inc.*, No. 15-cv-781 (LGS), 2016 WL 3194370, at *6 (S.D.N.Y. June 6, 2016).  Thus, the award must be confirmed.

None of the alleged flaws regarding the arbitrator's damages calculation support disturbing the award.  Regardless of whether the arbitrator was correct to credit Local 175's shop steward reports, (*see* Opp'n 14), it is not the Court's role to re-weigh the evidence, *see Pacheco*, 2016 WL 8711094, at *6.  New York Paving offers no case law to support its arguments that Local 175 was required to prove that a "particular Local 175 member was damaged" or that the award should have been reduced to the extent that the Local 175 workers who *were* assigned to crews might have been able to work additional overtime as a result of New York Paving's breach of the crew size provision. (*See* Opp'n 13.)  Moreover, the arbitrator did not ignore but instead explicitly considered and rejected those arguments. (*See* Calc. 4-6.)  New York Paving simply "do[es] not like how

19

the arbitrator applied the applicable law," which cannot support vacating an arbitration award.  *See Pacheco*, 2016 WL 8711094, at *6.

The case on which New York Paving relies for its contention that the arbitrator inappropriately awarded damages on behalf of "unidentified Local 175 members who did not in fact perform the work in question," (*see* Opp'n 14); *N.Y. Tel. Co. v. Commc'ns Workers of Am. Local 1100, AFL-CIO Dist. One*, 256 F.3d 89 (2d Cir. 2001), is inapposite.  The Second Circuit in *New York Telephone* upheld the district court's decision vacating an arbitration award that required the employer to make payments to a union based on work done by *non-union employees*.  256 F.3d at 92-93.  The arbitrator in *New York Telephone* also stated that a directly relevant Second Circuit precedent "was decided 34 years ago" and that "[p]erhaps it [was] time for a new court decision," relying instead on more recent out-of-circuit cases.  *Id.* at 91, 93.  *That* was manifest disregard for the law.  It is a far cry from what the arbitrator did here, however.  The arbitrator here committed no impropriety in awarding damages for work done by *union employees* (or work that should have been done by the bargained-for number of union employees) where he did not contradict any controlling authority in doing so.

Finally, the arbitrator's award did not contradict Article XI of the CBA, which specifies that the fringe benefit

20

contributions listed in that article shall be paid for "all hours worked." (*See* Opp'n 14 (quoting CBA Art. XI).) Nothing in Article XI suggests that the listed amounts would be improper compensation for a loss brought about by New York Paving's failure to comply with the CBA's crew size requirement. As Local 175 correctly points out, New York Paving's interpretation of Article XI – that Local 175 cannot recover on behalf of employees wrongly prevented from working because those employees have accumulated no "hours worked" – would render the crew size provision in Article IX, Section 6(c) a "virtual nullity" by making it unenforceable. (*See* ECF No. 18, Pet'r's Reply Mem. ("Reply") 15.) If the Court were reviewing the arbitration award *de novo*, New York Paving could at least try to convince the Court that such a result would be appropriate. Under the extremely high degree of deference applicable here, however, the Court finds that the arbitrator's interpretation, which gave the crew size provision force and effect, more than "arguably derived" from the CBA. *Tappan Zee Constructors*, 804 F.3d at 275 (quoting *Westerbeke*, 304 F.3d at 222). That is enough to confirm the award.

## II. Essence of the Agreement

New York Paving also argues that the arbitration award is unenforceable because it does not draw its "essence" from the CBA. In support, New York Paving cites Article X, Section 1 of

21

the CBA, which states that the CBA is "predicated on an effort
and a spirit of bringing about more equitable conditions in the
construction industry" and that the CBA may not be "misconstrued
to evade [its] principles or intent."  (Opp'n 15 (quoting CBA
Art. X, § 1).)

     That argument is meritless.  An award "draws its essence"
from a collective bargaining agreement so long as it "could
reasonably have been derived from the terms of the contract
itself."  *Time Warner Cable of N.Y. City LLC v. Int'l Bhd. of
Elec. Workers, AFL-CIO*, 170 F. Supp. 3d 392, 413 (E.D.N.Y. 2016)
(quoting *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 890
(2d Cir. 1982)).  As explained above, every step of the
arbitrator's reasoning at the very least could have been derived
from the terms of the CBA.  New York Paving's attempt to cast
arguments that already failed as propositions dictated by the
CBA's "spirit of the agreement" clause is a stretch at best.
*See Caring Habits, Inc. v. Fund for the Public Interest, Inc.*,
No. 11-cv-5768 (NSR), 2014 WL 7146041, at *9 (S.D.N.Y. Dec. 13,
2014) ("There is no legal basis to disregard unambiguous
contract language in favor of the 'spirit of the agreement.'")
(quoting *Pensioenfonds Metaal En Techniek v. Strategic DSRG,
LLC*, No. 09-cv-5644, 2012 WL 360549, at *8 (S.D.N.Y. Feb. 3,
2012)).

**III. Interest**

Though Local 175 did not request pre-judgment interest, the Court has discretion to award pre-judgment interest on its own motion and does so here. *See Rhodes v. Davis*, 628 F. App'x 787, 793 n.2 (2d Cir. 2015) (summary order). The Second Circuit recognizes a presumption in favor of pre-judgment interest for arbitration awards. *N.Y. City & Vicinity Dist. Council of Carpenters v. Golden Dev. & Constr. Corp.*, No. 15-cv-4462 (KAM), 2016 WL 4523927, at *3 (E.D.N.Y. Aug. 22, 2016) (citing *Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984)). District courts in the Second Circuit have exercised their discretion to award pre-judgment interest when confirming arbitration awards under collective bargaining agreements under Section 301 of the LMRA where the relevant agreement indicated that an arbitration award would be "final and binding." *See, e.g.*, *Riverbay Corp. v. Serv. Emps. Int'l Union, Local 32BJ*, No. 22-cv-10944 (LJL), 2023 WL 3738984, at *10 (S.D.N.Y. May 31, 2023).

The LMRA does not provide a pre-judgment interest rate; however, in awarding interest, the Court may look to state law to determine the appropriate rate. *N.Y. City Dist. Council of Carpenters v. Tried N True Interiors LLC*, No. 20-cv-51 (LGS), 2020 WL 1809323, at *4 (S.D.N.Y. Apr. 9, 2020). The common practice within this circuit is to grant interest at a rate of

nine percent per annum under New York state law.  *Id.* (citing N.Y. C.P.L.R. §§ 5001-04).

Here, the CBA states that any decision made under its arbitration clause "shall be final and binding upon all parties."  (CBA Art. V, § 3.)  Moreover, the parties explicitly stipulated that "the Award of the AAA arbitrator concerning the Grievance shall be final and binding, subject to standard review."  (Award 3.)  Because the arbitration award is final and binding, the Court awards pre-judgment interest on the award at a rate of nine percent per annum from the date of the award through the date of judgment.

Additionally, Local 175 is entitled to post-judgment interest at the federal statutory rate as of right.  *See* 28 U.S.C. § 1961.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court grants Local 175's petition to confirm the arbitration award and damages calculation.  For the same reasons, the Court denies New York Paving's cross-petition to vacate the award and damages calculation.

Local 175 is entitled to the principal balance of $1,349,267.40 and pre-judgment interest in an amount to be calculated by the Clerk of Court.  Local 175 shall be awarded post-judgment interest at the rate set forth in 28 U.S.C.

§ 1961(a) from the date judgment is entered until the date the judgment is paid in full.

The Court will address by separate order Local 175's request that it retain jurisdiction to issue a supplemental judgment.

Local 175 requests attorney fees.  (Pet. 10.)  The Court declines to award attorney fees at this time; however, Local 175 may move for attorney fees within fourteen days after entry of judgment.  *See* Fed. R. Civ. P. 54(d)(2)(B).

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order and to close this case.


**SO ORDERED.**

Dated:      December 21, 2023
            Brooklyn, New York
                                        _____
                                        KIYO A. MATSUMOTO
                                        United States District Judge
                                        Eastern District of New York